C. D. Thomas (State Bar. No. 171435)
Technology & Innovation Law Group, PC
1055 E. Brokaw Rd.
Suite 30-355
San Jose, CA  95131
(866)535-2006
dthomas@tipatents.com

Beth A. Oliak (State Bar No. 230236)
oliakb@pennoliak.com
Edward A. Pennington (pro hac vice to be filed)
epennington@pennoliak.com
PENNINGTON OLIAK PLLC
1055 Thomas Jefferson Street, NW Ste. L35
Washington, DC  20007
(202) 897-2725

*Attorneys for Plaintiff*
*LaVoult.com, LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAVOULT.COM, LLC, | Case No._____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR PATENT INFRINGEMENT** |
| META PLATFORMS, INC., F/K/A FACEBOOK INC., INSTAGRAM LLC, and WHATSAPP, INC., | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff LaVoult.com, LLC ("LaVoult") brings this action for patent infringement against Meta Platforms, Inc. f/k/a Facebook Inc. ("Meta"), Instagram, LLC and WhatsApp, Inc., and alleges as follows:

## SUMMARY

1.      This is a patent infringement suit relating to Meta's unauthorized and unlicensed use of LaVoult's U.S. Patent No. 8,751,594 ("the '594 patent") which describes a groundbreaking, first-of-its-kind "disappearing" message technology where electronic messages sent by a user are automatically deleted after being read when sent in "confidential mode".  Meta uses this technology in at least its Facebook Messenger, Instagram and WhatsApp applications and offerings to give an enhanced privacy feature that is highly desirable to the general consuming public.

2.      LaVoult recognized early on that electronic messaging (such as text messaging and instant messaging) created a multitude of privacy and confidentiality issues.  Every thought and every word users expressed in electronic messages had a long shelf life and, unless deleted, could potentially be accessed by the recipient (and possibly others) forever. Once a message was sent, the user had no ability to prevent the message from being shared by the original recipient with an unlimited number of other recipients. Users were vulnerable to others using any private or sensitive information contained in their messages to harass or exploit them, which could have serious consequences for their work and/or personal lives.

3.      Privacy and confidentiality are valuable, desirable, and often legally protectable commodities. Recognizing this value, and the demand for it, Fausto Aceves of LaVoult.com, LLC invented a way for messages to disappear before they can be misused. The U.S. Patent and Trademark Office ("USPTO") recognized the novelty, non-obviousness, and patentable subject matter expressed in Mr. Aceves's invention when it issued the '594 patent on June 10, 2014.

4.     Facebook, Inc., which was renamed Meta Platforms, Inc. in 2021, recognized the value of disappearing messaging when it acquired WhatsApp, Inc. in 2014 for $19 Billion.[1]

5.     Meta has integrated disappearing messaging into several of its branded products, including Instagram, WhatsApp, and Facebook Messenger, all having adopted LaVoult's patented technology.

6.     On the Facebook Messenger platform, disappearing messaging was deemed so important that founder Mark Zuckerburg recently announced new measures to detect when anyone attempts to screenshot a message before it disappears.[2]

## NATURE OF ACTION

6.     This a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

7.     Defendant Meta has infringed and continues to infringe and has induced and continues to induce infringement of the '594 patent at least by making, using, selling, and/or offering to sell its Facebook Messenger, Instagram and WhatsApp applications and/or offerings for mobile and other devices in the United States, including in this judicial District.

8.     Plaintiff LaVoult is the legal owner by assignment of the '594 patent which was legally and duly issued by the USPTO.  LaVoult seeks injunctive relief and monetary damages.

---

[1] *See, e.g.*, https://newsroom.fb.com/news/2014/02facebook-to-acquire-whatsapp/

[2] *See,* https://vt.co/sci-tech/mark-zuckerberg-warns-against-screenshotting-facebook-messenger-chats-amid-new-update

**THE PARTIES**

9.      Plaintiff LaVoult is a California company with its principal place of business at 3302 Washington Street, Suite 511, San Diego, California 92103. LaVoult is the owner of the intellectual property rights at issue in this action.

10.      In 2021, Facebook, Inc. ("Facebook") renamed itself Meta Platforms, Inc. According to Meta's website, Facebook was launched in 2004 with the goal of "chang[ing] the way people connect" through apps like Messenger, Instagram and WhatsApp.[3]

11.      Defendant Meta Platforms Inc. ("Meta") is a Delaware Corporation with a principal place of business in Menlo Park, California.

12.      Defendant Instagram, LLC ("Instagram") is a Delaware Limited Liability Company and a wholly owned subsidiary of Meta with a principal place of business in Menlo Park, California.

13.      Defendant WhatsApp, Inc. ("WhatsApp") is a Delaware corporation and a wholly owned subsidiary of Meta with a principal place of business in Menlo Park, California.

14.      On information and belief, Meta maintains offices in Los Angeles, California, operates and owns the website located at www.facebook.com, and markets, offers, and distributes applications such as the Facebook Messenger applications throughout the United States, including in this District.

15.      On information and belief, Facebook, Inc. ("Facebook") is a Delaware corporation and a wholly owned subsidiary of Meta, with a principal place of business in Meno Park, California.  Facebook operated the messenger application Facebook Messenger which, by virtue of the name change from Facebook, Inc. to Meta Platforms, Inc., is now operated by Meta.

---

[3] *See*, https://about.meta.com/company-info/

16.   Meta is jointly and severally liable for the activities of Facebook in operating the Facebook Messenger application, including for infringing the '594 patent.

17.   On information and belief, WhatsApp Inc. ("WhatsApp") is a Delaware corporation and wholly owned subsidiary of Meta, having previously been a wholly owned subsidiary of Facebook.

18.   On information and belief, WhatsApp operates and owns the website located at www.whatsapp.com, and markets, offers, and distributes applications such as the WhatsApp Messenger application throughout the United States, including in this judicial District.

19.   Meta is jointly and severally liable for the activities of its subsidiary WhatsApp, including for infringing the '594 patent.

20.   On information and belief, Instagram operates and owns the website located at www.instagram.com, and markets, offers, and distributes applications such as the Instagram application throughout the United States, including in this judicial District.

21.   On information and belief, Meta, through its subsidiaries or business units Facebook Messenger, Messenger, Instagram and WhatsApp, directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell and/or sells infringing products and services in the Unites States, including in the Central District of California, and otherwise purposefully directs infringing activities to this judicial District in connection with disappearing messaging functionality offered through Facebook Messenger, Instagram and WhatsApp.

22.   Meta has acted in concert with its subsidiaries and/or business units Instagram, Messenger and WhatsApp, and is otherwise liable jointly, severally, or otherwise for a right to relief related to or arising out of the same transactions, occurrences or series of transactions related to the making, selling, using or offering

1  to sell Facebook Messenger, Instagram and WhatsApp applications in this judicial

2  District.

3  **JURISDICTION AND VENUE**

4       23.    This is a civil action for patent infringement arising under the patent

5  laws of the United States, 35 U.S.C. § 1 *et seq*.

6       24.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and

7  1338(a) and under 35 U.S.C. §§ 271 *et seq*.

8       25.    This Court has personal jurisdiction over Defendants for at least the

9  following reasons: (1) Defendants have committed acts of patent infringement in

10  this judicial District, directly and through its subsidiaries and/or business unites; (2)

11  Defendants engage in other persistent courses of conduct and derives substantial

12  revenue from products and/or services provided to individuals in this judicial

13  District; and (3) Defendants have purposefully availed themselves with systematic

14  and continuous contacts with this judicial District and should reasonably expect to

15  be brought into this judicial Court.

16       26.    The Court has personal jurisdiction over Meta, Instagram and

17  WhatsApp because of the activities of all Defendants which include engaging in the

18  continuous and systematic business in this judicial District including by providing

19  infringing products and services to the residents of the Northern District of

20  California.  Meta has a regular and established place of business at its Menlo Park,

21  California headquarters and directly and regularly solicits business in this judicial

22  District through at least its Facebook Messenger, Instagram and WhatsApp social

23  media platforms marketed, offered and distributed in this judicial District. As owner

24  of Facebook Messenger, Instagram and WhatsApp, Meta is jointly and severally

25  liable for their activities.

26       27.    The Court has personal jurisdiction over WhatsApp because Meta and

27  WhatsApp engage engages in commerce with infringing activity by providing

28

1  infringing products and services in this judicial District by soliciting users of the

2  WhatsApp application.  WhatsApp has a regular and established place of business at

3  its headquarters in Menlo Park in the State of California including the employment

4  of software engineers and the advertising for positions in the Menlo Park area.

5  WhatsApp also solicits business in this judicial District by operating its website

6  www.whatsapp.com and its WhatsApp Messenger application and soliciting

7  business through its website.  As owner of WhatsApp, Meta is jointly and severally

8  liable for its activities.

9      28.    This Court has personal jurisdiction over Defendant Instagram since

10  Instagram has engaged, and continues to engage in, commerce within this judicial

11  District, directly or by Meta operating or controlling the activities of its subsidiary

12  Instagram, which does continuous systematic business in this District, including by

13  providing infringing products and services to the residents within this District that

14  Instagram knew would be used within this District.  Instagram, and thus Meta, has a

15  regular and established place of business within California through employees,

16  agents and others, including those directly employed by Meta, who assist, direct and

17  control the activities of Instagram.  Meta, through the Instagram website

18  www.instagram.com and the Instagram applications, commits infringing activity in

19  this judicial District.  As owner of Instagram, Meta is jointly and severally liable for

20  its activities.

21      29.    The activities of Meta, through and in connection with its subsidiary

22  companies, business units or brands Instagram, Facebook Messenger and

23  WhatsApp, has damaged and continues to damage LaVoult, in this District and

24  throughout the United States.

25      30.    Venue is proper in this judicial District pursuant to 28 U.S.C. §§ 1391

26  and 1400(b) at least because a substantial part of the events giving rise to the present

27  claims occurred in this judicial District, and because Meta, through its subsidiaries

28

---

7

1  or business units Facebook Messenger, WhatsApp, and Instagram, have committed

2  acts of infringement in this judicial District and have a regular and established place

3  of business in this judicial District.

4  <div align="center">**THE ASSERTED PATENT**</div>

5      31.    The '594 patent, entitled "Messaging System," was duly and legally

6  issued on June 10, 2014.  A true and correct copy of the '594 patent is attached as

7  **Exhibit A**.

8      32.    LaVoult is the assignee and owner of all right, title and interest in the

9  '594 patent.  The '594 patent is valid and enforceable.

10      33.    The '594 claims are directed to, among other things, a messaging

11  system and methods of communicating that ensure privacy of the participants in a

12  given two-way communication. The messaging system is an electronic messaging

13  system (for example, instant messaging, Short Message System (SMS) and email,

14  which are text-based communications) where messages are conveyed between two

15  or more users over a network (such as the Internet) on any of a multitude of devices,

16  including phones, personal computers, PDA's and the like. Ex. A, Col. 1, lines 22-

17  27 (hereinafter 1:22-27).

18      34.    The '594 patent refers to prior art messaging platforms, such as those

19  where the sender selects an expiration period by which a message disappears after

20  the expiration period expires.  Ex. A, 1:28-34 ("In one currently available messaging

21  App, a user may send a message to a recipient and specify a time span for that

22  message to expire.")

23      35.    Another prior art messaging platform offers a "delete on read" option

24  which causes the message to delete itself after expiration of a set period. Ex. A,

25  1:34-37 ("the message [deletes] itself 60 seconds after the recipient has opened the

26  message.")

27

28

<div align="center">8</div>

36.    Fausto Aceves, inventor of the '594 patent, recognized that these and other messaging apps failed to deliver a simple yet effective method of communicating messages in a way that maximizes privacy.

37.    The claims of the'594 patent are directed to an improved method of communicating which overcomes the problems associated with prior platforms. The improved method focusses on having first and second modes of messaging, between a first electronic device associated with a first user (i.e., the sender of a message) and a second electronic device associated with a second user (i.e., the recipient of the message), while using a single software application. The first mode of messaging is the "regular" mode (i.e., where messages are saved in memory), and the second mode of messaging is the "confidential" mode (where messages disappear and are irretrievable at a later time).  Ex. A, 8:55-62; 1:65 to 2:14.

38.    The "confidential" mode can be selected by the first user (sender) to send confidential messages. Ex. A, 8:66-67. Confidential messages are disappearing messages as a result of the history of the confidential messages being deleted automatically when one of the first user or the second user exits the second, or confidential, mode.  Ex.A, 9:3-7. The dual-mode communication system is described in detail at 6:8 to 7:62 of the '594 Patent, including by reference to the flowchart in FIG. 3, as set out below:

COMPLAINT FOR PATENT INFRINGEMENT





FIG. 3

39.    The claims of the '594 patent describe details of a technology that is not well-understood, routine or conventional.  The claims are not drawn to an abstract idea and are patent eligible.

40.    The description of the invention in the specification and claims of the '594 Patent created a technological solution to the many problems which existed in the prior art. In particular, claim 1 of the '594 Patent is not directed to an abstract idea. Rather, it is directed to a specific, convenient yet effective technical solution to the shortcomings of the prior art by allowing two communicating users on a common app to selectively make some or all of their communications completely private and confidential. First, unlike conventional messaging systems, messages are only temporarily (as opposed to persistently) stored. No electronic record or footprint of

1   the messages remain on the users' devices. They are forever irretrievable. Second,

2   recognizing that users may wish for there to be a more permanent record of some

3   communications, the system allows users to toggle or select between "regular" mode

4   and "confidential mode". Third, the fact that the disappearing messages are not

5   stored make the computers involved in the system faster and more efficient by

6   freeing up memory space.

7       41.    The filing date of the application for the '594 Patent is November 3,

8   2012 ("the Filing Date").  The application was fully supported by a provisional

9   application having a filing date of November 7, 2011.  As of either date, neither the

10  dual mode messaging (one being confidential) nor the automatic deletion without

11  user intervention of the history of the confidential message on the first and second

12  electronic devices used to communicate were well-understood, routine, or

13  conventional.

14      42.    The patent examiner in charge of prosecution of the '594 application

15  noted the novelty, non-obviousness and patentable subject matter involved in using

16  a single application between users and deleting a history of confidential messages

17  automatically and without user intervention.  He also recognized the novelty, non-

18  obviousness and patent subject matter involved in only displaying a confidential

19  message before the history of the confidential message is deleted automatically.

20      43.    The claims of the '594 patent are not directed to an abstract idea.  The

21  claims are directed to specific methods, and software implementing the methods, of

22  communicating in a way that preserves privacy.

23      44.    The claims of the '594 patent require activities and inputs by two users

24  participating in the sending and receiving of private messages.

25      45.    The steps performed in the claims of the '594 patent are of the type that

26  have not been held by the Federal Circuit to be broad, generic steps.  The steps do

27  not involve detecting information, or simply generating and transmitting

28

1   notifications based on detected information.  Nor do the claimed steps of the '594

2   patent involve receiving a message and determining the acceptance or allowance of

3   the message or processing information.

4   46.   The claims of the '594 patent describes methods for making messages

5   disappear, without user intervention.   The invention provides a dual-mode

6   communication system between two or more users, employing a single software

7   application to switch between a first mode of messaging and a second mode.

8   47.   The claims of the '594 patent recite a communication method involving

9   human interaction to achieve a tangible beneficial result.  The tangible beneficial

10   result includes, *inter alia*, that a user, through user input, is able to switch between

11   two modes of messaging.  The two modes of messaging are a first regular mode of

12   messaging, and second confidential mode of messaging, respectively.

13   48.   The claims require some manipulation by a human user to achieve a

14   tangible, beneficial result. In four particular exemplary passages recited in Claim 1,

15   a human user takes an action to achieve a tangible beneficial result.

16   49.   Claim 1 recites "receiving inputs from the first user for composing a

17   regular message while in the first mode of messaging," and "receiving inputs from

18   the first user to composing a confidential message while in the second mode of

19   messaging." Ex. A, 8: 62-67.

20   50.   Claim 1 further recites "deleting a history of the confidential message

21   on the first electronic device and on the second electronic device based on at least

22   one of the first user and the second user exiting the second mode of messaging."

23   Ex. A, 9: 3-7. Thus, deleting and non-displaying of confidential messages occurs

24   based on "at least one of the first user and the second user exiting the second mode

25   of messaging."

26   51.   Additionally, claim 1 includes tangible hardware rather than abstract

27   structures.  In Claim 1, which recites "wherein while in the first mode of messaging,

28

a regular message is sent to the second user in data transmitted through a server and saved in a memory; and wherein while in the second mode of messaging, the confidential message is sent to the second user in data transmitted through the server." Ex. A, 9: 11-16.

52. The passage quoted above includes "a server" and "a memory" used in the first mode of messaging and recites "a server" used in the second mode of messaging. Because Claim 1 involves human interaction to achieve a tangible beneficial result and recites tangible hardware structure, and for other reasons, Claim 1 is more than an abstract idea.

53. The claims are not directed to a computer processing data. The claims are directed to a method of communicating, in which two "communicators" (persons in communication) are exchanging messages through a communication network. The invention is not directed to a computer system but instead to a communication method that uses computer technology, i.e., servers and memory, to transmit messages through a communications network. To the extent that the invention, expressed in the claims, is said to be directed to software, the claims are directed to software that improves the operation of computers by decreasing usage of storage space in memory, freeing up memory for other applications and processes.

54. Claim 1 is directed to subject matter that not only improves the functionality of computers but also provides tangible improvements to communications by providing users with options when using the communication method, to go into two distinct modes, with one mode used for sensitive, private and/or confidential communications, and the other mode retaining the communications for future reference or use.

55. The elements of each claim both individually and as an ordered combination possess an inventive concept. The individual claim limitations or the ordered combination of the claim limitations in Claim 1 transforms the nature of the

claim into a patent-eligible application, even if Claim 1 was directed to an abstract idea.

## META AND ITS MESSAGING PLATFORMS

57.    Meta, through its previous entity Facebook, has existed as a social media platform since 2004.[4]  Facebook started offering cross-platform messaging in 2013.[5] Well after the '594 patent issued, Facebook Messenger did not offer a secret or disappearing messaging mode of operation.

58.    In 2014, Facebook acquired WhatsApp for a reported $19 Billion.[6] Several reputable sources in the industry opined that the acquisition was critical to the survival of Facebook as a social medial platform.[7] And the quintessential feature of the WhatsApp platform is disappearing messaging.

59.    In 2016, Facebook began offering disappearing messaging for its Facebook Messenger app.[8]  The app allowed a user to select a "self-destruct" mode so that messages disappeared after a selectable period of time.

60.    At least as early as 2016, Meta's subsidiary Instagram offered disappearing messaging as a selectable feature.  With Instagram a user could select the duration of a message. [9]

---

[4] https://www.theguardian.com/technology/2007/jul/25/media.newmedia

[5] https://techcrunch.com/2013/10/29/facebook-messenger-phone-number/

[6] https://money.cnn.com/2014/02/19/technology/social/facebook-whatsapp/index.html

[7] https://www.buzzfeednews.com/article/charliewarzel/why-facebook-bought-whatsapp

[8] https://www.wired.com/2016/10/facebook-completely-encrypted-messenger-update-now/

[9] https://about.fb.com/news/2021/12/whatsapp-default-disappearing-messages-multiple-durations/

61.     Meta CEO Zuckerberg reported recently that users and businesses are interacting more than 600 million times per day across its platforms, which at least include Facebook Messenger, WhatsApp and Instagram.[10]

62.     Meta operates Instagram, Messenger and WhatsApp and reports their financial results as Meta's financial results as one of two segments: "[f]amily of Apps (Foa) and Reality Labs (RL).  According to Meta's year 2023 10-K, the Foa includes [Facebook] Messenger, Instagram, and WhatsApp.[11]

63.     Meta, through its Facebook Messenger, WhatsApp and Instagram messaging platforms, dominates the messaging industry.

64.     On information and belief, Meta, through its branded messaging platforms Facebook Messenger, WhatsApp, and Instagram, is reported to have over three billion monthly active users worldwide as of the 4th quarter of 2023:[12] The graphic below charts the rapid rise in users coinciding with the adoption of a disappearing messaging feature, and further coinciding with a time period following issuance of the '594 patent:

_____

[10] https://techcrunch.com/2023/10/26/meta-says-users-and-businesses-have-600-million-chats-on-its-platforms-every-day/

[11] https://d18rn0p25nwr6d.cloudfront.net/CIK-0001326801/c7318154-f6ae-4866-89fa-f0c589f2ee3d.pdf

[12] https://www.statista.com/statistics/264810/number-of-monthly-active-facebook-users -worldwide/

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    65.    Through its Instagram division alone, Meta is projected to earn close to

17 $30 Billion in the year 2025:[13]

18
19
20
21
22
23
24
25
26
27

[13] https://www.statista.com/statistics/271633/annual-revenue-of- instagram/

28





66.     On information and belief, Meta manages, maintains and controls two out of three of the top messaging platforms in the world, through its WhatsApp and Facebook Messenger platforms, both of which provide disappearing messaging. WhatsApp alone is reported to have two billion monthly users:[14]

---

[14] https://www.statista.com/statistics/258749/most-popular-global-mobile-messenger-apps/

COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    67.    On information and belief, Meta's growth and dominance in the field of

17  messaging is directly attributable to the offering of disappearing messaging through

18  its messaging platforms Messenger, WhatsApp and Instagram.

19    68.    Well prior to Meta adopting a disappearing messaging functionality on

20  any of its platforms, LaVoult had not only patented disappearing messaging, but had

21  built its own messaging app with disappearing functionality.

22    69.    LaVoult had foreseen the privacy problems associated with messaging,

23  and invented a solution that Meta, Facebook Messenger, Instagram and WhatsApp

24  had all eventually adopted well after the issue date of the '594 patent.

25
26
27
28

COMPLAINT FOR PATENT INFRINGEMENT

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,751,594**

70.     LaVoult incorporates by reference and re-alleges all of the foregoing paragraphs 1 through 69 of this Complaint as if fully set forth herein.

71.     The '594 patent discloses, among other things, a messaging method for a recipient and a sender, whereby inputs for composing a first message are received from the sender, and inputs for a predetermined amount of time for the first message to expire are also received from the sender. The first message is sent to the recipient and stored in a memory associated with the sender.  Ex. A, 2:35-40.

72.     In the '594 patent, the electronic device of the recipient attempts to receive the first message. The first message is deleted from the electronic device of the recipient after the predetermined amount of time has expired. Ex. A, 2:40-43.

73.     The demand for consumer messaging platforms that offer disappearing messaging led Meta and its various apps to offer disappearing messaging to differentiate their products from others and thus drive consumers to Meta's products over other choices.

74.     Meta and its subsidiaries, operating as one "metaverse" offering messaging on several platforms, including Instagram, WhatsApp and Facebook Messenger, have provided disappearing messaging since at least as early as 2016. Each disappearing messaging feature infringes one or more claims of the '594 patent.

76.     On information and belief, Meta's accused applications and websites are an important part of Meta's offerings in the United States and are the primary or only product or service offered by WhatsApp, Messenger and Instagram.

76.     The claims of the '594 patent recite a combination of elements including switching between first and second modes, receiving input from a user, sending the message to a second user, automatically deleting message history, and displaying the message until the user exits the second messaging mode.  Accordingly, the claims as a whole integrate the method of communicating into a practical application.

77.     Meta's Instagram app is a message, photo and video sharing app available on iPhone and Android devices.  Instagram users may communicate with each other via chat including text and audio/video communication. Instagram has a "vanish mode" which allows users to send each other disappearing messages, photos, videos, and other content in a chat.  Content sent in the vanish mode disappears when a user leaves the chat or turns off the vanish mode.

78.     Claim 1 of the '594 patent is infringed by Meta's Instagram applications and messaging offerings.  The preamble of claim 1 describes a communication method between two or more users.  By way of example, Instagram users communicate with each other via chat.[15]  Messenger and WhatsApp have the same or similar offerings as Instagram.

79.     Instagram has a normal mode and a vanish mode.  According to the Instagram website, "[v]anish mode lets people send each other disappearing messages, photos, videos and other content in Instagram chats. Content sent in vanish mode disappears when someone leaves the chat or turns vanish mode off."[16]

80.     Claim 1 requires a step of "switching between a first mode of electronic messaging and a second mode of electronic messaging while using a single software application, both the first mode of electronic messaging and the second mode of electronic messaging being between a first electronic device associated with a first user and a second electronic device associated with a second user." Ex. A, 8: 55-62.

81.     Meta's Instagram offering provides that a user may send messages on Instagram to another user through two different models: regular mode and vanish mode.  The vanish mode lets users send each other disappearing messages, photos, videos, and other content in a chat.  Content in the vanish mode disappears when a user

---

[15] https://help.instagram.com/1750528395229662

[16] https://help.instagram.com/888592124998543/?cms_platform=android-app&helpref=platform_switcher

leaves the chat or turns vanish mode off.[17]  Meta's Messenger and WhatsApp messaging platforms have similar features.

82.     Claim 1 of the '594 patent includes the step "receiving inputs from the first user for composing a regular message while in the first mode of messaging." Ex. A,  8: 63-64. Instagram provides the ability for users to compose a regular message in a first mode.  The message is composed in a chatbox generated by the Instagram app. Meta's WhatsApp and Messenger applications have similar functionality.

83.     Claim 1 of the '594 patent further includes the step "sending the regular message to the second user while in the first mode of messaging." Ex. A, 8: 65-66. Using the Instagram app, a user can send regular messages to another user by typing the message in the chatbox and hitting a "send" button.   Meta's WhatsApp and Messenger applications have the same chatbox features.

84.     Claim 1 further requires "receiving inputs from the first user for composing a confidential message while in the second mode of messaging." Ex. A,   8: 66-67. In Instagram, user A can turn on the vanish mode by swiping up from the chat. User A can then type confidential messages for user B by typing the message in the chatbox.  The messages sent in vanish mode disappear when a user leaves the chat or turns off the vanish mode. [18]  Similar functionality is provided in the WhatsApp and Messenger applications.

85.     Claim 1 further requires "sending the confidential message to the second user while in the second mode of the messaging."  Ex. A, 9: 1-2. In Instagram, user A can send confidential messages to user B by typing the message ("Confidential Message") in the chatbox and hitting the "send" button.  WhatsApp and Messenger have similar features.

---

[17] https://help.instagram.com/561290520611666/?helpref:related_articles

[18] https://help.instagram.com/888592124998543

86.     Claim 1 further requires "automatically and without user intervention, deleting a history of the confidential message on the first electronic device and on the second electronic device based on at least one of the first user and the second user exiting the second mode of messaging, wherein the confidential message is only displayable before the history of the confidential message is deleted." Ex. A, 9: 3-7.

87.     In Instagram, messages sent via vanish mode are automatically deleted when a user leaves the chat or turns off the vanish mode.  The message sent earlier in vanish mode ("confidential message") is deleted and is no longer available after the vanish mode is turned off.  User B also cannot view the message again after leaving the chat.  Similar features are found in the WhatsApp and Messenger applications.

88.     Claim 1 of the '594 further states: "wherein the confidential message is only displayable before the history of the confidential message is deleted." Ex. A, 9: 8-10. In Instagram, messages are sent via vanish mode are visible to the user only until a user leaves the chat or turns off the vanish mode.  User A can view the message sent in vanish mode only while vanish mode is turned on.  User B can also view the message until vanish mode is turned off and User B leaves the chat.  Similar features are provided in the WhatsApp and Messenger applications.

89.     Claim 1 further includes the following: "wherein while in the first mode of messaging, a regular message is sent to the second user in data transmitted through a server and saved in a memory." Ex. A, 9: 11-13. The Instagram application sends and receives data via a server.  All messages sent/receiving by a user are stored in the memory of the user's device.  From Instagram, "[a]ny messages you send and receive are relayed by the network and are not stored in their servers.  Whether that's comments or DMs, they are stored on your device and nowhere else."[19]  Similar features are found in the WhatsApp and Messenger applications.

90.     Claim 1 of the '594 patent further includes that "while in the second mode

---

[19] https://social.techjunkie.com/does-instagram-keep-deleted -messages/

of messaging the confidential message is sent to the second user in data transmitted through the server, the data being displayed until at least one of the first user and the second user exits the second mode of messaging." Ex. A, 9: 14-18.  The Instagram application sends and receives data via a server.  The messages sent via vanish mode disappear when a user leaves the chat or turns off the vanish mode.  User A cannot view the message "Confidential message" after the vanish mode is turned off.  User B also cannot view the message again after leaving the chat. The WhatsApp and Messenger applications have similar features.

91.     Each and every element of Claim 1 of the '594 patent is found in the offerings of Instagram.  On information and belief, WhatsApp and Facebook Messenger have disappearing messages that are provided in the same or similar way as those provided by Instagram, the infringement of which is described above as representative of the suite of Meta messaging offerings.

92.     Meta has infringed and is infringing, individually and/or jointly, either literally or under the doctrine of equivalents, at least claim 1 of the '594 patent in violation of 35 U.S.C. §§ 271 *et seq*., directly and/or indirectly, by making, using, offering for sale, selling, offering for lease, leasing in the United States, and/or importing into the United States without authority or license, the '594 infringing Facebook Messenger, WhatsApp and Instagram products.

93.     Meta has been, and currently is, an active inducer of infringement of one or more claims of the '594 patent under 35 U.S.C. § 271(b).  On information and belief, one or more of the '594 infringing products directly and/or indirectly infringe (by induced infringement) at least claim 1 of the '594 patent, literally and/or under the doctrine of equivalents.

94.     Meta has been, and currently is, an active contributor to infringement of one or more claims of the '594 patent under 35 U.S.C. § 271(c).  Meta's affirmative acts of providing and offering to provide, in this judicial District and elsewhere in the United States, the '594 infringing products and causing the '594 infringing products to

be used to contribute to Meta's users' direct infringement of at least claim 1 of the '594 patent.

95.    The accused components within the '594 infringing products and method steps are material to the inventions of the '594 patent, are not staple articles or commodities of commerce, have not substantial non-infringing uses, and are known by Meta to be specially made or especially adopted for use in the infringement of the '594 patent.

96.    Meta has knowledge of the '594 patent and its infringement, at least as of the filing date of this Complaint.  By the time of trial, Meta will have known and intended (since receiving such notice) that its continued actions would actively induce, and contribute to, the infringement of one or more claims of the '594 patent, including at least Claim 1.

97.    Meta may have infringed the '594 patent through other software utilizing the same or reasonably similar functionality, including other versions of its messenger platforms (including WhatsApp, Facebook Messenger and Instagram) and features that include disappearing messaging.  LaVoult reserves the right to discover and pursue all such additional infringing platforms, applications and associated software and hardware.

98.    WhatsApp allows the user to send messages that disappear by during on a "disappearing messages" feature in settings.  The user can turn disappearing messages on for one or more existing chats or set up disappearing messages by default for all new chats.   Disappearing messages can be set to disappear after periods of time selected by the user.[20] At least Claim 1 of the '594 patent is infringed by the WhatsApp application.

99.    Meta promotes WhatsApp as a way of communicating messages in private: "WhatsApp is a simple, dependable, and secure messaging application that is

---

[20] https://faq.whatsapp.com/5590979194321336/?cms_platform=web

used by people and businesses around the world to communicate and transact in a private way."[21]

100. The WhatsApp application requires communication through a cellular network, among others: "WhatsApp (Officially WhatsApp Messenger) is an instant messaging (IM) and voice-over-IP (VoIP) service owned by technology conglomerate Meta. It allows users to send text, voice messages and video messages, make voice and video calls, and share images, documents, user locations, and other content. WhatsApp's client application runs on mobile devices and can be accessed from computers. The service requires a cellular mobile telephone number to sign up."[22]

101. The WhatsApp application allows a user to delete messages they sent. "This lets users remove their sent message from a recipient's device and prevent future access to it. This is an especially useful feature if a user sends a message to the wrong person or has shared critical information with someone who should not have access to it."[23]

102. The '594 patent notes that, in the second mode of messaging, "inputs are received from the first user for composing a confidential message which is then sent to the second user. The confidential message is sent to the second user in data transmitted through the server, and the data is irretrievable at a later time." *Id.*, at 6: 10-26.

103. The WhatsApp messaging application presents a user interface feature that allows a user to selectively toggle or switch between a first mode (regular) of electronic

---

[21] Form 10-K: Annual report for the year ending December 31, 2023, filed February 1, 2024, page 8, available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/1326801/000132680124000012/meta-20231231.htm

[22] Wikipedia online dictionary available at: https://en.wikipedia.org/wiki/WhatsApp

[23]

WhatsApp" by Barney, TechTarget, 2024, Page 2

messaging and a second mode (disappearing messages) of electronic messaging.[24]

104.  In the WhatsApp messaging application, the first user is able to selectively toggle the setting for disappearing messages in the user interface feature to turn off disappearing messages in order to send the regular message to the second user while in the first mode of messaging:



105.  The WhatsApp online help center provides a document describing various messaging situations, at "How to turn disappearing messages on or off:"

**"Turn disappearing messages on or off by default**
Anyone can turn on disappearing messages by default. Once turned on, all new individual chats will start with disappearing messages set to the duration you select.
1. Click ⋮ **Settings** > **Privacy**.
2. Click **Default message timer**.
3. Click **24 hours**, **7 days**, **90 days**, or **Off**.
4. If you want to apply the timer to existing chats, click **"by selecting them"**. Click the checkbox next to each chat.
5. Tap ✅"

**"Turn off disappearing messages in a specific chat**
Anyone in the chat can disable disappearing messages at any time. You can keep specific messages to stop them from disappearing, as long as the duration time hasn't passed.

---

[24] "WhatsApp Disappearing Messages: How do they work and How to enable them" by O'Boyle, May 2023, page 2.

If you disable disappearing messages, you can't keep them.
1. Open a chat.
2. Click the contact's name.
3. Click **Disappearing messages**.
  - If prompted, tap **Continue**.

4. Click **Off**.
5. Tap ✅"

106.   The aforementioned steps follow claim 1 of the '594 patent which describes "sending the regular message to the second user while in the first mode of messaging."

107.   Claim 1 of the '594 patent states

A communication method between two or more users, comprising the steps of: switching between a first mode of electronic messaging and a second mode of electronic messaging while using a single software application, both the first mode of electronic messaging and the second mode of electronic messaging being between a first electronic device associated with a first user and a second electronic device associated with a second user." Ex. A, 8: 53-61.

108.   The WhatsApp messaging application receives inputs from the first user to compose a confidential Disappearing Message while in the second mode of messaging: "To turn on the feature, follow these steps:
1. Open the chat you want to change the settings for.
2. Tap on the **contact's name or group name** at the top of the chat.
3. Scroll to **Disappearing messages**. The current status is displayed below this.
4. Select **Disappearing messages**. You'll see a brief introduction to disappearing messages. Choose **Continue**.
5. Toggle the setting to **On**."

109.   A portion of the user interface of the WhatsApp messaging application is shown below, which presents the first user with a notification for "Disappearing messages" and provides for selection between the first mode or second mode, "OFF" or "ON", respectively:

110.  According to the WhatsApp Help Center, the WhatsApp messaging application can receive input from the first user for composing a confidential message while in the second mode of messaging.

**"Turn on disappearing messages in a specific chat**
Anyone can turn on disappearing messages in an individual chat. Once turned on, new messages in the chat will disappear after the duration you select.
1. Open a chat.
2. Click the contact's name.
3. Click **Disappearing messages**.
   • If prompted, tap **Continue**.
4. Select **24 hours**, **7 days**, **90 days**, or **Off** under **Message timer**.
5. Tap ✅"

**"Turn disappearing messages on or off by default**
Anyone can turn on disappearing messages by default. Once turned on, all new

28

individual chats will start with disappearing messages set to the duration you select.
1. Click ⋮ **Settings** > **Privacy**.
2. Click **Default message timer**.
3. Click **24 hours**, **7 days**, **90 days**, or **Off**.
4. If you want to apply the timer to existing chats, click **"by selecting them"**. Click the checkbox next to each chat.
5. Tap ✅ "

111.  Claim 1 of the '594 patent requires "sending the confidential message to the second user while in the second mode of the messaging. Ex. A, 9: 1-2.

112.  Claim 1 of the '594 patent requires "automatically and without user intervention, deleting a history of the confidential message on the first electronic device and on the second electronic device based on at least one of the first user and the second user exiting the second mode of messaging, wherein the confidential message is only displayable before the history of the confidential message is deleted." Ex. A, 9:3-10.

113.  In the WhatsApp messaging application, a first user can send a confidential "disappearing message to a second user.  From the WhatsApp Help Center, "You can choose to turn disappearing messages on for all chats or select specific chats. In individual chats, either you or the person you're messaging can turn disappearing messages on or off."

114.  In the WhatsApp messaging application, upon toggling to the second mode of messaging, a confidential message cannot be retrieved after a period of time, and the confidential message is not permanently saved in any type of memory, history or database.

115.  In the WhatsApp messaging application, when the first user toggles to the second confidential mode of messaging in order to select "Disappearing Messages", the sent "Disappearing Messages" are automatically deleted after a period of time.[25]

116.  In the WhatsApp messaging application, when the first user turns on the

---

[25] "Disappearing Messages on WhatsApp: Everything You Need to Know" by Steve Clark, December 2020.

29

second mode of messaging, which enables the WhatsApp "Disappearing Messages" feature, the second user can receive a notification:



117.  In the Clark publication, the following illustration shows a portion of the WhatsApp interface that describes how the "disappearing messages" feature is used:



COMPLAINT FOR PATENT INFRINGEMENT

118.  The "Disappearing Messages" feature of the WhatsApp messaging application includes a user interface feature which allows the first user to selectively toggle between the first normal mode and the second confidential mode ("Disappearing Messages" mode).

119.  As illustrated in WhatsApp Help Center, the "Disappearing Messages" feature can be turned off in a specific chat:

"Anyone in the chat can disable disappearing messages at any time. You can keep specific messages to stop them from disappearing, as long as the duration time hasn't passed.
"If you disable disappearing messages, you can't keep them."

"1. Open a chat.
2. Click the contact's name.
3. Click **Disappearing messages**.
   - If prompted, tap **Continue**.

4. Click Off.
5. Tap ✅"

120.  In the WhatsApp messaging application, messages in the chat can be text, photos, images, videos, voice messages, etc., or combinations thereof.

121.  The WhatsApp messaging application includes a "View Once" feature in which, if selected by a first user sending a message to a second user, when the second user clicks and opens a photo or video, and then closes the photo or video, in response to such closing, the photo or video disappears and is irretrievable.

122.  If after the second user clicks and opens the photo or video, and then closes the photo or video, or closes the media viewer, or exits the WhatsApp messaging application, the photo or video automatically disappears.

123.  With the WhatsApp messaging application, the first user can switch the "Disappearing Messages" setting to "ON" in the chat, which places the chat into a second mode of messaging and can select the "View Once" mode to be applied to the photo or video.  The first user can send the photo or video as a new message to the second user.  At the time that the new message is received by the second user,

31

the chat is in the second mode of messaging ("Disappearing Messages").

124.  The second user can switch the chat from the second mode of messaging back to the first mode of messaging.  The second user can then click on and open the new message, and since the first user has enabled the "View Once" mode to be applied to the photo or video, then when the second user closes the photo or video, exits the media viewer, or exits the WhatsApp messaging application, the photo or video is automatically deleted and no longer displayed.

125.  The following sequence of actions in the WhatsApp messaging application, utilizing the "Disappearing Messages" feature and the "View Once" feature, satisfies the claim 1 limitation:

a.  A first user opens the WhatsApp messaging application on a first mobile device.

b.  The first user selects a previous chat with a second user who has a second mobile device.

c.  The first user wants to send a photo to the second user through the WhatsApp messaging application and wants the photo to disappear after being opened by the second user.

d.  The first user selects the "Disappearing Messages" setting to be "ON", which places the chat into a second mode of messaging (i.e., the "Disappearing Messages" mode).

e.  The first user selects the photo to be sent in the chat and applies the "View Once" mode to the photo.

f.  The first user sends the photo as a message to the second user through the WhatsApp messaging application.

g.  The second user is notified by his second mobile device that he has a new message in the WhatsApp messaging application.

h.  The second user clicks on and opens the chat having the new message (i.e., the photo that was sent by the first user), wherein the chat is in the second mode of messaging, as set by the first user.

i.  The second user clicks on and opens the photo, which was sent in "View Once" mode, and views the photo, which is displayed in a media viewer on the second mobile device.

j.  The second user selects the "Disappearing Messages" setting to be "OFF" which exits the chat from the second mode of messaging.

32

k.  The second user closes the photo, exits the media viewer, or exits the WhatsApp messaging application on his second mobile device.

l.  When the second user closes the photo, exits the media viewer, or exits the WhatsApp messaging application, the photo is automatically, and without human intervention, deleted, and is not displayed or retrievable for view.

126.  Claim 1 of the '594 patent further requires "while in the first mode of messaging, a regular message is sent to the second user in data transmitted through a server and saved in a memory." Ex. A, 9: 11-13.

127.  In the WhatsApp messaging application, by turning off disappearing messages in a specific chat, the first user can send a regular message to the second user which is saved in memory.

"1. Open a chat
2. Click the contact's name
3. Click **Disappearing messages**
   - If prompted, tap **Continue**

4. Click **Off**
5. Tap ✅"

128.  Claim 1 of the '594 patent requires "while in the second mode of messaging, the confidential message is sent to the second user in data transmitted through the server, the data being displayed until at least one of the first user and the second user exits the second mode of messaging. Ex. A, 9: 14-19.

129.  In the WhatsApp messaging application, by turning on the "Disappearing Messages" mode (i.e., the second mode) for existing chats and/or all new messages, and turning the "View Once" mode on for the new message, when the new "Disappearing Message", i.e., the confidential message, is sent to the second user, the new confidential message can be displayed until at least one of the first user and the second user exits the second mode of messaging.

130.  The following sequence of actions of the WhatsApp messaging application employing the "Disappearing Messages" and "View Once" features satisfy

33

this limitation of claim 1:

- The first user wants to send a photo to the second user through the WhatsApp messaging application and wants the photo to disappear after being opened by the second user.
- The first user turns on the "Disappearing Messages" setting, which puts the chat into a second mode of messaging (i.e., the "Disappearing Messages" mode).
- The first user selects the photo to be sent in the chat and applies the "View Once" mode to the photo.
- The first user sends the photo as a message to the second user through the WhatsApp messaging application.
- The second user clicks on and opens the photo, which was sent in "View Once" mode, and views the photo.
- The second user turns off the "Disappearing Messages" setting, thereby exiting the chat from the second mode of messaging.
- The second user closes the photo, exits the media viewer, or exits the WhatsApp messaging application on his second mobile device.
- When the second user closes the photo, exits the media viewer, or exits the WhatsApp messaging application, the photo is automatically, and without human intervention, deleted, and cannot displayed again.

131.  Using the WhatsApp messaging application and its "Disappearing Messages" and "View Once" features, a first user can open a chat with a second user, enable the "Disappearing Messages" feature in order to place the chat into a second mode of messaging, apply the "View Once" mode to a new message (e.g., a photo), and send the new message to the second user in the chat.

132.  The "Disappearing Messages" feature works in conjunction with the "View Once" mode applied to the new message.  At the time the new message is received, the chat is in "Disappearing Messages" mode with "View Once" mode being applied to the new message.  If the second user opens the chat, turns "Disappearing Messages" off to exit the chat from the second mode of messaging, opens the received message (e.g., the photo), and views the received message, then when the second user closes the new message, or closes the media viewer, or exits the WhatsApp messaging application, the

new message cannot be opened or displayed again.

133.  The WhatsApp messaging application directly infringes at least claim 1 of the '594 patent, literally or by equivalents.

134.  The WhatsApp messaging application infringes at least claim 1 of the '594 patent indirectly by contributory infringement or induced infringement.

135.  Meta, through its messaging applications, has infringed willfully.  LaVoult gave direct notice of the '594 patent to Meta's general counsel by letter dated November 10, 2023.  Meta's general counsel never responded to the letter, nor did anyone else at Meta, Facebook or WhatsApp.  LaVoult sent a second letter to Meta's Deputy General Counsel on May 1, 2024, and received an email response indicating another Meta attorney would respond.  LaVoult reached out to this attorney by email seeking a response, but never received one.

136.  Meta has provided the '594 accused messaging platforms to its customers and, on information and belief, instructions to use the '594 accused messaging platforms in an infringing manner while being on notice of or willfully blind to the '594 Patent and Meta's infringement (directly or through the other defendants WhatsApp and Instagram).   Therefore, Meta knew or should have known of the '594 patent and of its own infringing acts, or deliberately took steps to avoid learning of those facts.

137.  Meta knowingly and intentionally encourages and aids at least its end-user customers to directly infringe the '594 Patent.

138.  Upon information and belief, Meta's subsidiaries and business units, including Instagram and WhatsApp, have provided the '594 accused products to customers through various third-party application stores (*e.g.*, the Apple and Google stores) and instructions to end-user customers so that such customers will use the '594 accused products in an infringing manner.

139.  Meta's end-user customers directly infringe at least claim 1 of the '594 patent in their intended manner to infringe.  Meta induces such infringement by providing infringing products and instructions to enable and facilitate infringement,

knowing of, or being willfully blind to the existence of the '594 patent. Meta specifically intends that its actions will result in infringement of at least claim 1, or subjectively believes that its actions will result in infringement of the '594 Patent or took deliberate steps to avoid knowing of those facts.

140. Meta further infringes by contributory infringement at least claim 1 by the actions of its subsidiaries, business units or brands WhatsApp, Instagram and Messenger by providing the accused products and/or software components thereof, that embody a material part of the claimed inventions of the '594 patent, that are known by Meta to be specially made or adapted for use in an infringing manner and are not staple articles with substantial non-infringing uses.

141. Meta's accused products are specially designed to infringe at least claim 1 and their accused components have no substantial non-infringing uses. In particular, the software modules and code that implement and perform the infringing functionalities identified above are specially made and adapted to conduct the functionality and do not have any substantial noninfringing uses.

142. Meta's infringement, either attributable to Meta or to its subsidiary defendants Instagram and WhatsApp, has been and continues to be willful and deliberate, entitling LaVoult to enhanced damages and attorneys' fees.

143. Meta's infringement, either attributable to Meta or to its subsidiary defendants Instagram and WhatsApp is exceptional and entitles LaVoult to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

144. LaVoult has been damaged by Meta's infringement and will continue to be damaged unless Meta is enjoined by this Court. LaVoult has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors LaVoult, and the public interest is not dis-served by an injunction.

145. LaVoult is entitled to recover from Meta all damages that LaVoult has sustained as a result of Meta's infringement of the '594 patent, including without limitation lost profits and not less than a reasonable royalty.

1

2                                    **PRAYER FOR RELIEF**

3          LaVoult requests that this Court enter judgment against Defendant as follows:

4          (A)      that Defendants have infringed the '594 Patent;

5          (B)      awarding LaVoult its damages suffered as a result of Defendants'

6   infringement of the '594 Patent pursuant to 35 U.S.C. § 284;

7          (C)      enjoining Defendants, their officers, directors, agents, servants, affiliates,

8   employees, divisions, branches, subsidiaries and parents, and all other acting in concert

9   or privity with it from infringing the '594 patent pursuant to 35 U.S.C. § 283;

10         (D)      awarding LaVoult its costs, attorneys' fees, expenses and interest; and

11         (E)      granting LaVoult such other and further relief as this Court may deem just

12  and proper.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DEMAND FOR JURY TRIAL

LaVoult hereby demands trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38.

Dated: September 24, 2024          Technology & Innovation Law Group, PC


By*:/C.D. Thomas/*
C. D. Thomas (State Bar. No. 171435)
Technology & Innovation Law Group, PC
1055 E. Brokaw Rd.
Suite 30-355
San Jose, CA  95131
(866)535-2006
dthomas@tipatents.com

Beth A. Oliak (SBN 230236)
Edward A. Pennington
PENNINGTON OLIAK, PLLC
1055 Thomas Jefferson Street, NW   Ste. L35
Washington, DC  20007
Tel: (202) 897-2725
Fax: (202) 838-824
oliakb@pennoliak.com
epennington@pennoliak.com

*Attorneys for Plaintiff*
*LaVoult.com, LLC*

38