UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAVOULT.COM, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>META PLATFORMS, INC., et al.,<br><br>    Defendants. | Case No.  24-cv-06724-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 21 |

LaVoult.com, LLC filed this action for patent infringement against Meta Platforms, Inc. f/k/a/Facebook Inc., Instagram LLC, and WhatsApp, Inc. (collectively, "Defendants").  Now pending before the Court is Defendants' motion to dismiss the complaint.  Having carefully considered the parties' submissions, and with the benefit of oral argument on April 3, 2025, the Court GRANTS Defendants' motion to dismiss with prejudice.  As a matter of law, the '594 patent is ineligible for patent protection under 35 U.S.C. § 101.

**BACKGROUND**

Patent No. 8,751,594 ("594 patent") was issued in June 2014.  (Dkt. No. 1 ¶ 31.)[1] "LaVoult is the legal owner by assignment of the '594 patent."  (*Id.* ¶ 8.)  As alleged in the complaint, the '594 patent "describes a groundbreaking, first-of-its-kind 'disappearing' message technology where electronic messages sent by a user are automatically deleted after being read when sent in 'confidential mode'."  (*Id.* ¶ 1.)  The specification explains the patent "involves using a single software application to switch between a first mode of electronic messaging and a second mode of electronic messaging."  (Dkt. No. 1-1 at 9.)  In the first "regular" mode, messages are

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

"saved in a memory, e.g., a permanent memory." (*Id.*) In the second "confidential" mode, messages are sent "in data transmitted through the server and not permanently saved in any type of memory, history or database." (*Id.*) As a result, in confidential mode, "the data is irretrievable at a later time." (*Id.*) When a user exits the confidential mode of messaging, the confidential messages are automatically deleted. (*Id.* at 13.)

Plaintiff filed suit in September 2024, alleging "Meta and its subsidiaries . . . have provided disappearing messaging since at least as early as 2016" and "[e]ach disappearing messaging feature infringes one or more claims of the '594 patent." (Dkt. No. 21 ¶ 74.) Specifically, Plaintiff alleges Instagram's "vanish mode" and WhatsApp's "disappearing messages" feature infringe Claim 1 of the '594 patent. (*Id.* ¶¶ 77, 98.)

## MOTION TO DISMISS

Defendants move to dismiss on the ground the '594 patent is ineligible for patent protection under 35 U.S.C. § 101. Patent eligibility "is a question of law, based on underlying facts" that "may be, and frequently has been, resolved on a Rule 12(b)(6) . . . motion." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). Dismissal is appropriate "where the undisputed facts, considered under the standards required by [Rule 12(b)(6)], require a holding of ineligibility under the substantive standards of law." *Id.*

Section 101 "defines the subject matter that may be patented." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). Under § 101, patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. "These categories are broad, but they are not limitless." *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1136 (N.D. Cal. 2017). "Laws of nature, natural phenomena, and abstract ideas are not patentable," *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014), because "they are the basic tools of scientific and technological work," which are "free to all . . . and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012) (cleaned up). Allowing patent claims for such purported inventions "might tend to impede innovation more than it would promote it." *Id.*

But courts must "tread carefully in construing this exclusionary principle lest it swallow all

2

1   of patent law." *Alice Corp.*, 573 U.S. at 217.  "At some level, all inventions embody, use, reflect,
2   rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* (cleaned up).  So, "in
3   applying the § 101 exception, [the Court] must distinguish between patents that claim the
4   'building blocks' of human ingenuity and those that integrate the building blocks into something
5   more, thereby 'transforming' them into a patent-eligible invention." *Id.* (cleaned up).

6   To draw this distinction, the Court engages in a two-step "*Alice*" analysis.  First, the Court
7   "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218.
8   If so, the Court then assesses "whether the elements of each claim, both individually and as an
9   ordered combination[,] . . . transform the nature of the claim into a patent eligible application." *Id.*
10  at 217 (cleaned up).  This second step of the analysis is "a search for an inventive concept—i.e., an
11  element or combination of elements that is sufficient to ensure that the patent in practice amounts
12  to significantly more than a patent upon the ineligible concept itself." *Id*. at 217-18 (cleaned up).

### I.    *ALICE* STEP ONE

At *Alice* Step One, the Court decides whether the '594 patent's claims are directed to an "abstract idea."  This inquiry has two parts.  First, the Court identifies precisely what the claims are directed to accomplish.  Second, the Court determines whether that "focus" is an abstract idea.

#### A.    The "directed to" inquiry

The Court need not individually analyze every claim under the *Alice* rubric when certain claims are "representative."  *Twilio*, 249 F. Supp. 3d at 1141 (citing *Alice*, 573 U.S. at 224).  As Plaintiff does not dispute Defendants' contention that Claim 1 is representative, the Court limits its analysis to Claim 1.  *See AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1375 (Fed. Cir. 2024) (quotation marks omitted) ("[C]laims may be treated as representative in a § 101 inquiry if a patentee makes no meaningful argument for the distinctive significance of any claim limitations not found in the representative claim").

Claim 1 recites:

> A communication method between two or more users, comprising the steps of:
>
> switching between a first mode of electronic messaging and a second mode of electronic messaging while using a single software

> application, both the first mode of electronic messaging and the second mode of electronic messaging being between a first electronic device associated with a first user and a second electronic device associated with a second user;
>
> receiving inputs from the first user for composing a regular message while in the first mode of messaging;
>
> sending the regular message to the second user while in the first mode of messaging;
>
> receiving inputs from the first user for composing a confidential message while in the second mode of messaging;
>
> sending the confidential message to the second user while in the second mode of messaging; and
>
> automatically and without user intervention, deleting a history of the confidential message on the first electronic device and on the second electronic device based on at least one of the first user and second user exiting the second mode of messaging,
>
> wherein the confidential message is only displayable before the history of the confidential message is deleted;
>
> wherein while in the first mode of messaging, a regular message is sent to the second user in data transmitted through a server and saved in a memory; and
>
> wherein while in the second mode of messaging, the confidential message is sent to the second user in data transmitted through the server, the data being displayed until at least one of the first user and the second user exits the second mode of messaging.

(Dkt. No. 1-1 at 12-13.)

In evaluating Claim 1, the Court examines "the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to [an abstract idea]." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019) (cleaned up). Finding a claim's "focus" requires a delicate balancing act. While the process necessarily requires some high-level description, the Court must articulate "what the claims are directed to" with "enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.").

4

On one hand, Defendants contend the patent is "directed to the abstract idea of automatically deleting confidential messages when exiting confidential mode." (Dkt. No. 21 at 14.)  In support of this assertion, Defendants point to the patent's prosecution history.[2]  In an amendment after a non-final rejection, the applicant stated: "Automatic deleting of messages is a significant aspect of the current invention. . . .  A user doesn't have to remember to delete confidential messages." (Dkt. No. 21-2 at 9.)  On the other hand, Plaintiff contends the patent is "generally directed to a telecommunications method and apparatus in which two users can switch between two modes of messaging, one being 'regular' or non-confidential and the other being 'confidential' . . . and 'irretrievable.'" (Dkt. No. 29 at 6.)

While the applicant's comments in the prosecution history inform the "directed to inquiry," *Mortg. Application Techs., LLC v. MeridianLink, Inc.*, 839 F. App'x 520, 525 (Fed. Cir. 2021), the focus is the claim language.  *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1363 (Fed. Cir. 2023) ("Our focus is on the claims, as informed by the specification.").  Considering Claim 1's language—as informed by the prosecution history and specification—the Court finds Claim 1 directed to a communication system to switch between two modes of electronic messaging: in regular mode, messages sent are saved in a memory, while in confidential mode, messages are stored temporarily and automatically deleted if either user exits confidential mode.

### B.     The "abstract idea" inquiry

Next, the Court determines whether this focus is an abstract idea.  "Neither the U.S. Supreme Court nor the Federal Circuit has set forth a bright line test separating abstract ideas from concepts that are sufficiently concrete so as to require no further inquiry under the first step of the *Alice* framework." *Twilio*, 249 F. Supp. 3d at 1138 (citing *Alice*, 573 U.S. at 221).  That a claim is directed to "mental processes that can be performed in the human mind or using a pencil and paper" is a sign of abstraction.  *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed.

---

[2] At the parties' request, (Dkt. No. 21 at 9 n.1; Dkt. No. 29 at 10), the Court judicially notices the '594 patent's prosecution history at Docket Nos. 21-2, 21-3, and 29-4.  *See Lexos Media IP, LLC v. eBay Inc.*, 722 F. Supp. 3d 1042, 1049 (N.D. Cal. 2024) ("Courts may . . . take judicial notice of . . . a patent's prosecution history.")

Cir. 2021) (cleaned up). Likewise, "[a] claimed method's similarity to fundamental . . . practices long prevalent is yet another clue that the claims may be abstract and unpatentable." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024) (cleaned up). To determine whether a claim's focus is an abstract idea, courts also "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334.

In this case, viewing the relevant facts in the light most favorable to Plaintiff, Claim 1 is directed to a process that could be performed by humans. As one illustration, an individual exchanging handwritten messages with a recipient seated next to them could designate certain messages private and shred those messages after the recipient reads them. Likewise, two individuals recording their conversation could turn off the recorder, thereby designating that portion of the conversation confidential and rendering the words they exchange irretrievable. "[W]ith the exception of generic computer-implemented steps"—in this case, the automated deletion of messages when one user exits the application—"there is nothing in the claim[] [itself] that foreclose [it] from being performed by a human." *See Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016).

Defendants analogize the case to *RingCentral, Inc. v. Dialpad, Inc.*, 372 F. Supp. 3d 988 (N.D. Cal. 2019). In *RingCentral*, the patent described "a synchronization application which synchronizes the client messages with the server messages associated with the client." *Id.* at 1001. The application, after comparing the messages on the server with the messages on the client, "identifie[d] a set of actions that need to be performed to synchronize the messages . . . "includ[ing] adding messages, deleting messages, or changing the status of a message to read or unread." *Id.* At *Alice* Step One, the court concluded the claims were directed to patent-ineligible abstract ideas because "[t]he functions described in the claims could all be performed by humans." *Id.* at 1004. That is, a person could compare folders on the desktop with folders on a mobile device, note the discrepancies, and make changes as required to "synchronize the desktop copy with the copy on the first mobile device"—including by deleting messages. *Id.* at 1004.

So too here, a human can perform the steps of the '594 patent by exchanging "regular" notes with a recipient, then designating subsequent messages confidential and shredding them

6

after showing them to the recipient. Claim 1 "do[es] this in a computer environment, but that doesn't transfigure an idea out of the realm of abstraction." *See PersonalWeb*, 8 F.4th at 1316 (concluding the claimed data-management functions, including "marking copies of data items for deletion," were abstract because humans could perform them).

Plaintiff does not address *RingCentral* or other cases Defendants cite where the claimed invention involved automated deletion. Instead, Plaintiff cites cases where the claim was directed to "a specific improvement to the way computers operate." *Enfish*, 822 F.3d at 1336. For example, *Enfish* involved "several patents related to a 'self-referential database'" that had two features not found in traditional databases. *Id.* at 1329, 1332. "[F]irst the self-referential model can store all entity types in a single table, and second the self-referential model can define the table's columns by rows in that same table." *Id.* at 1332. "The patents [taught] that multiple benefits flow from this design" including "faster searching," "more effective storage of data," and "more flexibility in configuring the database." *Id.* Because "the self-referential table recited in the claims on appeal [was] a specific type of data structure designed to improve the way a computer stores and retrieves data in memory," the Federal Circuit concluded the claims at issue were not directed to an abstract idea. *Id.* at 1339. In doing so, the Federal Circuit distinguished claims "directed to an improvement in the functioning of a computer"—like the one before it— from claims that "simply add[] conventional computer components to well-known business practices." *Id.* at 1338.

In this case, drawing all reasonable inferences in Plaintiff's favor, Claim 1 falls into the latter category. The toggling between two modes of communication and the automatic deletion of messages described in Claim 1 do not improve the functioning of a computer. Whereas in *Enfish*, the claimed invention provided benefits such as faster searching and better storage, the benefits described in the '594 patent's specification stem from the abstract idea itself. (Dkt. No. 1-1 at 12 (explaining the dual messaging mode "may be useful when for example, communicating restricted, secret or private content such as medical conditions, financial information, business plans, sensitive corporate data or legal issues").)

In opposition, Plaintiff argues Claim 1 has the added benefit of "saving storage space."

7

1  (Dkt. No. 29 at 19.)  At oral argument, Plaintiff conceded this storage space benefit is nowhere

2  disclosed in the prosecution history, specification, or claim.  Plaintiff nonetheless insisted the

3  Court can consider this benefit because it is an "inherent" and "obvious" advantage.  But Plaintiff

4  could not provide any support for the proposition that the Court can or should consider "inherent"

5  benefits in deciding whether a claim is abstract.  Moreover, that the benefit is "obvious" is another

6  way of saying the benefit inures from the use of generic computer components.  And

7  "improvements in speed, cost, and accuracy are benefits of using computers for automation

8  generally and do not result from some other inventive concept."  *People.ai, Inc. v. Clari Inc.*, No.

9  2022-1364, 2023 WL 2820794, at *12 (Fed. Cir. Apr. 7, 2023).

10        Similarly, Plaintiff insists Claim 1 "simplifies and reduces time to segregate normal

11  messages from confidential messages, and avoids the extra steps of coordinating deletion by

12  people at both ends of a communication."  (Dkt. No. 29 at 19.)  But this is precisely what makes

13  the focus of Claim 1 abstract.  While Claim 1 may make the process of deleting messages more

14  efficient, it remains the case that Claim 1's steps can be performed by humans.  *See Credit*

15  *Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("[A]utomation of

16  manual processes using generic computers does not constitute a patentable improvement in

17  computer technology.").

18        Plaintiff's other citations are likewise inapposite.  *See Finjan, Inc. v. Blue Coat Sys., Inc.*,

19  879 F.3d 1299, 1305 (Fed. Cir. 2018) (noting "the method of claim 1 employ[ed] a new kind of

20  file that enables a computer security system to do things it could not do before"); *Core Wireless*

21  *Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018) (noting the claim

22  "disclos[ed] a specific manner of displaying a limited set of information to the user, rather than

23  using conventional user interface methods to display a generic index on a computer . . . resulting

24  in an improved user interface for electronic devices").  Whereas the claimed inventions in *Finjan*

25  and *Core Wireless*—like that in *Enfish*—recited a specific improvement in computer functionality,

26  in this case, "computers are invoked merely as a tool" to implement the abstract process of

27  switching between two modes of communication and automatically deleting messages in one of

28  the modes.  *See Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020).

1    So, drawing all reasonable inferences in Plaintiff's favor, Claim 1 fails *Alice* Step 1 as a matter of law because it is directed to an abstract idea.

## II.    *ALICE* STEP TWO

Patent claims directed to an abstract idea may be patentable if the claims contain an "inventive concept," either individually or taken together. *Alice*, 573 U.S. at 225. The inventive concept must add "significantly more" to the abstract idea, *Mayo*, 566 U.S. at 72-73, enough to "transform" it into a "patent-eligible application" of the abstract idea, *Alice*, 573 U.S. at 221.

Here, there is no inventive concept transforming Claim 1's abstract idea into a patent-eligible application. Just as the Court determined the claim fails to elaborate on specific improvements to computer capabilities at *Alice* Step One, the claim fails at *Alice* Step Two as a matter of law for the same reason. *See Enfish*, 822 F.3d at 1339 (explaining the Step One and Step Two inquiries can blend together when software patents are at issue).

Plaintiff's arguments to the contrary are unavailing. Plaintiff contends "the ordered combination of the claim limitations of claim 1 constitutes an inventive concept." (Dkt. No. 29 at 21.) But Claim 1 describes the necessary order of steps to carry out the abstract idea of a dual-mode communication system wherein confidential messages are deleted. The steps are to: (1) receive and send inputs in the regular mode of messaging, (2) switch from the regular mode of messaging to confidential mode, (3) receive and send inputs in the confidential mode of messaging, and (4) upon a user exiting confidential mode, automatically delete the confidential messages. (Dkt. No. 1-1 at 12-13.) Figure 3 in the specification reinforces this sequence:

//
//
//
//
//
//
//
//



(*Id.* at 6.) This "ordered combination of steps, which matches the ordered combination of steps traditionally practiced by people manually, are themselves part of the abstract idea and cannot supply the inventive concept." *See People.ai*, 2023 WL 2820794, at *12 (quotation marks omitted). While the '594 patent "goes into detail about how the receiving and sending is accomplished" as Plaintiff observes, (Dkt. No. 29 at 23), such detail does not transform the abstract idea into an inventive concept. *See Mayo,* 566 U.S. at 82 ("[S]imply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable.").

Nor does Claim 1's invocation of a server to send the messages render Claim 1 patent-eligible. In opposition to Defendants' motion to dismiss, Plaintiff describes the benefits of using a "specialty, private server," (Dkt. No. 29 at 7), but as Plaintiff conceded, this language is not in the

claim or specification. Rather, Claim 1 describes messages sent "in data transmitted through a server." (Dkt. No. 1-1 at 13.) And elsewhere, the specification says "[s]erver . . . is any server capable of processing and storing data." (Dkt. No. 1-1 at 10.) Further, Plaintiff fails to explain how data transmission through a server is anything but a generic computer component being used to apply the abstract idea. *See Realtime Data LLC v. Array Networks Inc.*, No. 2021-2251, 2023 WL 4924814, at *12 (Fed. Cir. Aug. 2, 2023) (listing "data server" among other "generic computer components" does not confer patent eligibility on an otherwise abstract idea). Put another way, "[s]tating an abstract idea while adding the words 'apply it with a computer'" is not enough for patent eligibility. *See Alice*, 573 U.S. at 223.

At oral argument, Plaintiff raised a new Step Two argument, asserting the "something more" transforming the idea into a patent-eligible invention is the utilization of two different kinds of memory: permanent memory for messages exchanged in regular mode, and temporary memory for the messages exchanged in confidential mode. But this argument is not grounded in the language of the claim or the specification. Claim 1 says "while in the first mode of messaging, a regular message is sent to the second user in data transmitted through a server saved in *a memory*." (Dkt. No. 1-1 at 13) (emphasis added).) The specification is likewise unspecific about the type of memory the claimed invention uses: "The memory may be, for example, a random access memory (RAM), or a type of read only memory (ROM) such as erasable programmable ROM (EPROM) or Flash ROM, hard drive or any such storage system typically used for storing computer related data." (*Id.* at 10.)

Moreover, memory is among the "generic computing terms . . . that provide a generic technical environment for performing the abstract idea." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1364 (Fed. Cir. 2023); *see also In re Bd. of Trustees of Leland Stanford Junior Univ.*, 991 F.3d 1245, 1252 (Fed. Cir. 2021) (at Step Two, concluding a claim describing the "conventional steps of receiving and storing data in a computer memory" remained abstract); *Realtime Data*, 2023 WL 4924814, at *12) (at Step Two, concluding the claim remained abstract when the plaintiff "fail[ed] to explain how a . . . 'memory system' [was] anything but [a] generic computer component[]"). So here, Plaintiff's invocation of permanent and temporary memory

11

does not transform the abstract idea into a patent-eligible application.

The same is true for Claim 1's description of temporarily storing then automatically deleting messages. In discussing prior art, the '594 patent specification describes a "currently available messaging App" where users can specify a time for messages to expire, and when that "time limit is reached, the message automatically deletes from the sender's device, recipient's device and server." (Dkt. No. 1-1 at 9.) On that app, which was available prior to the '594 patent's issuance, users could also select "the 'delete on read' mode of operation which causes the message to delete itself 60 seconds after the recipient has opened the message." (*Id.*) So, contrary to Plaintiff's assertion, "automatic deletion of the history of the message 'without human intervention'" does not render Claim 1 patent-eligible. (Dkt. No. 29 at 23.) Moreover, automatic deletion cannot be the inventive concept. *See ClearDoc, Inc. v. RiversideFM, Inc.*, No. CV 21-1422-RGA, 2022 WL 3355960, at *5 (D. Del. Aug. 15, 2022) ("To the extent [the plaintiff] is arguing that the automatic deletion of media content supplies the inventive concept, I have already decided that automatic deletion is an abstract idea.").

Plaintiff's citations in support of its *Alice* Step Two analysis are also inapposite. In *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016), the patent "claim[ed] a technology-based solution . . . to filter content on the Internet that overcomes existing problems with other Internet filtering systems" and "improve[d] the performance of the computer system itself." The Federal Circuit distinguished that patent from patents like Plaintiff's claiming "an abstract idea implemented on generic computer components, without providing a specific technical solution beyond simply using generic computer concepts in a conventional way." *Id.* at 1352. Likewise, in *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300–01 (Fed. Cir. 2016), "the claim's enhancing limitation necessarily require[d] that these generic components operate in an unconventional manner to achieve an improvement in computer functionality."

Here, in contrast, there is nothing in the complaint or specification to support a plausible inference the '594 patent improves computer functionality. Plaintiff does not argue "that whether the claims present an improvement to software and computer functionality is a disputed factual

12

1   issue." *See WhitServe LLC v. Dropbox, Inc.*, 854 F. App'x 367, 373 (Fed. Cir. 2021). And even

2   had Plaintiff made this argument, "purported factual questions" do not necessarily "preclude

3   dismissal . . . at the pleadings stage." *See id.* Here, viewing the relevant facts in the light most

4   favorable to Plaintiff, there is no plausible case that the patent satisfies the eligibility requirement.

## III.     FUTILILTY OF AMENDMENT

Because Claim 1 recites an invention that is merely a routine and conventional use of technology, the Court GRANTS Defendants' motion to dismiss without leave to amend. "Although leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 705 (Fed. Cir. 2023) (cleaned up) (quoting *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011)). "A patentee must do more than invoke a generic need for claim construction or discovery to avoid grant of a motion to dismiss under § 101." *Trinity Info Media*, 72 F.4th at 1360–61. "Instead, the patentee must propose a specific claim construction or identify specific facts that need development and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes." *Id.*

At oral argument, Plaintiff did not identify a proposed claim construction or additional factual allegations that warrant leave to amend or a claim construction hearing. As to claim construction, Plaintiff stated the only construction needed—if at all—involves Claim 1's language stating messages in regular mode are sent "in data transmitted through a server and saved in a memory." (Dkt. No. 1-1 at 13.) Plaintiff argued "memory" should be defined to include a temporary memory and a permanent memory. But, as described above, the use of two types of memory does not constitute an improvement in technology, so even if the Court adopted Plaintiff's construction, the patent would still fail the *Alice* test. Likewise, as to the proposed amendment, Plaintiff represented it would amend the complaint to clarify the patent involves permanent memory and temporary memory. But once again, the invocation of memory—a generic computer component—is insufficient to render the '594 patent's abstract idea patent-eligible. And "[n]o amendment to a complaint can alter what a patent itself states." *Id.* at 706.

13

Because amendment would be futile, dismissal with prejudice is appropriate.

## CONCLUSION

For the reasons above, the Court GRANTS Defendants' motion to dismiss with prejudice.

This Order disposes of Docket No. 21.

**IT IS SO ORDERED.**

Dated: April 4, 2025

_____
JACQUELINE SCOTT CORLEY
United States District Judge

14